IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RYAN ANDREW PEUCKER, §<br>     #2008689, §<br>               PETITIONER, §<br> §<br>v. § CIVIL NO. 3:18-CV-1370-D-BK<br> §<br>LORIE DAVIS, DIRECTOR, §<br>TEXAS DEPARTMENT OF §<br>CRIMINAL JUSTICE, §<br>CORRECTIONAL INSTITUTIONS DIV., §<br>               RESPONDENT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the United States magistrate judge for pretrial management, including a recommended disposition of the petition for writ of habeas corpus brought under 28 U.S.C. § 2254. Upon review, the habeas corpus petition should be **DENIED**.

**I.    BACKGROUND**

A jury convicted Petitioner Ryan Andrew Peucker of possession of more than four grams but less than 200 grams of a controlled substance, concluded that the enhancement allegations of Peucker's two prior convictions were "true," and sentenced him to 75 years' imprisonment. *State v. Peucker*, No. F48640 (18th Jud. Dist. Ct., Johnson Cty., Tex., July 9, 2015), *aff'd*, No. 06-15-00132-CR, (Tex. App.–Texarkana 2015).  Doc. 18-3 at 2.  The Texas Court of Criminal Appeals (TCCA) refused Peucker's petition for discretionary review on September 28, 2016.

*Peucker v. State*, PDR No. 651-16 (Tex. Crim. App. 2016). On May 2, 2018, the TCCA denied state habeas relief without written order. *Ex Parte Peucker*, No. WR-87,833-01, Doc. 18-24.

Peucker filed this Section 2254 petition on May 30, 2018. Doc. 3. He alleges that his trial and appellate counsel provided ineffective assistance. *Id.*, Doc. 7. The Government filed a response, arguing the petition fails on the merits. Doc. 17.   Peucker filed a reply. Doc. 19.

## II.   FEDERAL HABEAS CORPUS PROCEEDINGS

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. When reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The provisions of Section 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *see Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). As a

2

condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim presented was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86,102-03 (2011). A petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5thCir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits).

A state court's factual findings "shall be presumed to be correct" unless petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

### III.     INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Peucker alleges his trial counsel provided ineffective assistance by: (1) failing to inform Peucker of a plea offer; (2) inadequately advising Peucker of the strength of the prosecution's case, thereby influencing Peucker to plead not guilty; (3) failing to object to witness testimony

on confrontation grounds; and (4) failing to request a directed verdict. Doc. 3 at 6-7. He additionally alleges that his appellate attorney provided ineffective assistance by (1) failing to raise a sufficiency-of-the-evidence claim on appeal, and (2) harboring a conflict of interest. *Id.* at 8.

### A. Applicable Law

To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U. S. at 694. Petitioner must "affirmatively prove, not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 691. Additionally, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

In addition, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance, [under *Strickland v. Washington*, 466 U.S. 668, 689 (1984)], through the 'deferential lens of §

2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted). In light of the deference accorded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

### B.  Plea Offer

Peucker argues that his trial counsel, William Mason (Mason), did not notify him of a plea offers of 15 years' confinement and ten years' probation. Doc. 3 at 6; Doc. 7 at 12-13. In support of his claim, Peucker cites a letter he received from Mason, dated May 20, 2016, which states that, "[p]rior to trial the District Attorney offered you a plea-bargain of 15 years TDC (POCS) plus a 10 year probation (Criminal Mischief), which you declined." *See* Doc. 3 at 13. Peucker avers that the first time he was aware of this plea offer was when he received Mason's letter. Doc. 3 at 6.

A defense counsel "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). If counsel allows the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance. *Id*.

Here, the record demonstrates that Peucker was aware of the plea offer and chose to reject it. On December 2, 2014, Peucker signed a court document entitled *Defendant's Rejection of Final Plea Bargain Offer*. Doc 18-35 at 66. The document was also signed by Mason and an assistant district attorney. *Id*. Additionally, during a status conference on that same date, Peucker rejected the plea offer in open court. Doc. 18-10 at 4.

At the conference, the following exchange took place:

THE COURT: Ryan Andrew Peucker. This is F48640. You are Ryan Andrew Peucker; is that correct, sir?

THE DEFENDANT: Yes, sir.

5

>THE COURT: Mr. Peucker, I have in front of me a Rejection Of Plea Offer And Certification Of Readiness For Trial indicating you're rejecting the offer made by the State.
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And you're asking for a jury trial; is that correct, sir?
>
>THE DEFENDANT: Yes, sir.

Doc. 18-10 at 4.

Peucker appears to argue that the offer referenced by Mason in the May 20, 2016 letter, and the offer on the *Defendant's Rejection of Final Plea Bargain Offer* and *Rejection of Plea Offer and Certification of Readiness for Trial* documents, *see* Doc. 18-35 at 65-66, were different. *See* Doc. 7 at 12-13. However, he provides no evidence and points out only that the plea rejection documents, Doc. 18-35 at 65-66, contain more detail in that they also specify a condition of probation. *See* Doc. 7 at 12-13. The plea rejection documents state that Peucker is rejecting a plea offer of "25 years TDCJ-ID or 15 years TDCJ-ID + 10 years TDCJ-ID probated for 10 years *w/ SAFPF*,"[1] Doc. 18-35 at 65 (emphasis added), while Mason's letter characterizes the plea agreement as "15 years TDC (POCS) plus a 10 year probation (Criminal Mischief)." Doc. 3 at 13. Peucker argues that because Mason's letter did not include the language "w/ SAFPF," Mason must be referencing a separate plea offer by the prosecution. *See* Doc. 7 at 12. But Peucker fails to demonstrate any material difference in the offers. Mason also points to no other evidence in the record to demonstrate the existence of a separate offer. And Mason's failure to include the probation condition of SAFPF in his letter to Peucker, approximately one year and six months after Peucker refused the plea offer, does not demonstrate that there were

---

[1] Peucker states that the acronym 'SAFPF' signifies Substance Abuse Felony Punishment Facility. Doc. 7 at 12.

6

actually two different offers made by the prosecution. Thus, Peucker has failed to establish that counsel was inefffective. *Strickland*, 466 U.S. at 687

Furthermore, Peucker raised this claim in his state habeas application, *see* Doc. 18-34 at 25-26, which the TCCA denied. *See* Doc. 18-24. Peucker fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See Williams*, 529 U.S. at 402-03; *Childress*, 103 F.3d at 1224-25.

As such, Peucker has not shown that there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

### C. Inadequate Advice

Peucker avers that Mason "diminished the state's evidence," thus "influencing [Peucker] to reject the plea offer and proceed to trial." Doc. 3 at 6.

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Frye*, 566 U.S. at 140 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 168-70 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373, (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish that he was prejudiced by having to stand trial rather than waiving it through a plea bargain, a defendant must show that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that

7

> the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164.

Here, Peucker fails to demonstrate a reasonable probability that but for Mason's advice, he would have accepted a plea offer rather than proceed to trial. First, the record shows that, as early as October 7, 2014, Peucker's prior counsel informed the trial court that Peucker "very much want[ed] a trial in this case." Doc. 18-8 at 4. Furthermore, the only evidence Peucker cites to demonstrate that Mason convinced him to forgo a plea bargain is one sentence in a letter Mason sent to Peucker, which states in pertinent part:

> I believe all the true facts about the case will come out in the jury trial. I believe that a jury will have to be convinced beyond a reasonable doubt that you committed a crime. *I don't think the State's evidence is strong enough to do that.*

Doc. 3 at 17 (emphasis added). This letter was dated November 21, 2014, *id.*, approximately six weeks after Mason had been appointed to represent Peucker. *See* Doc. 18-8 at 5. Nothing in Mason's letter demonstrates that he was advising Peucker regarding a plea offer by the prosecution. *See id.* Mason merely states his opinion on the strength of the State's evidence. In this regard, there is no evidence whatsoever that the performance of counsel—who did not have the benefit of hindsight and the outcome of the trial—was in any way deficient.

In his reply brief, Peucker relies on the Supreme Court holding in *Lafler* in support for his argument. Doc. 19 at 6. However, the facts in *Lafler* differ significantly from those of Peucker. In *Lafler*, the prosecution had, on two occasions, offered the defendant a plea offer. *See Lafler*, 566 U.S. at 161. The defendant, "[i]n a communication with the court . . . admitted guilt and expressed a willingness to accept the offer." *Id.* However, on advice of his attorney, the defendant later rejected both offers. *See id.* The defendant then rejected a third plea offer on the first day of trial. *See id.*

8

Conversely, the record reflects that Peucker "very much want[ed] a trial in this case." Doc. 18-8 at 4. Indeed, Peucker points to no evidence that, like the defendant in *Lafler*, he ever admitted his guilt and expressed a willingness to plead guilty in exchange for a plea offer. *See generally* Doc. 3, Doc. 7; Doc. 19. Moreover, Peucker has not established that there was even a plea offer on the table at the time of Mason's opinion, nor does he demonstrate that Mason's opinion was precipitated by the State's offer of a plea bargain. *See id*.

In sum, Peucker wholly fails to demonstrate that but for his counsel's singular statement regarding his opinion of the strength of the State's case, there is a reasonable probability that he would have accepted a plea offer from the State rather than proceed to trial. Therefore, Peucker's claim lacks merit. *See Lafler*, 566 U.S. at 163–164 (2012).

Moreover, Peucker raised this issue in his state habeas application, doc. 18-34 at 27-28, which the TCCA denied. Doc. 18-24. And Peucker fails to demonstrate the state court denial was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03 (2000). He fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.

### D. Confrontation

Peucker claims that Mason provided ineffective assistance when he "failed to object to his right to confront [the] analyst who performed the confirmatory test on the alleged controlled substance." Doc. 3 at 7. He specifically alleges that Nichole Huddleston (Huddleston), the analyst who testified at Peucker's trial, only partially tested the substance and was not the analyst who conducted the test that confirmed that the substance was methamphetamine. Thus he contends his counsel was ineffective for not objecting on confrontation grounds. *Id*. In support

9

of his claim, Peucker references the chain of custody document demonstrating that an extraction of the substance was sent to a different laboratory than the one where Huddleston worked. *See* Doc. 3 at 19.

Peucker is mistaken about the facts, however. At trial, Huddleston testified that she tested the substance and determined it to 4.63 grams of a mixture and substance containing methamphetamine. Doc. 18-13 at 172-3. During the trial, the following exchange took place between the prosecutor and Huddleston:

> Q. Okay. Now, the last item which is, I believe, State's Exhibit No. 5, is that the one that is reflected in your number 14-01456?
>
> A. That is correct.
>
> Q. Okay. And can you tell us what the results of your testing are of that? First of all, did you weigh that?
>
> A. Yes, I weighed it first. The weight is 4.63 grams of methamphetamine.
>
> * * *
>
> Q. Okay. And in this particular case, you, without any packaging at all, you came up with a couple of conclusions here. First of all, the weight of the drugs being what?
>
> A. 4.63 grams.
>
> Q. Okay. That would be a weight in between 4 grams and 200 grams; is that correct?
>
> A. That is correct.
>
> Q. Okay. And that contains what substance?
>
> A. Methamphetamine.

*Id*. at 172-74.

Huddleston acknowledged that an extraction of the substance was sent to a separate lab, but confirmed that "this [was] just part of the same evidence [she was] already testing." *Id*. at

10

178. Again, on cross-examination, Huddleston confirmed that she conducted the testing on the substance to confirm it was methamphetamine. *See Id*. at 187-190. Additionally, the record indicates that the Forensic Chemistry Report in this case was signed and date-stamped by Huddleston. Doc. 18-16 at 18.

Because Peucker's factual basis is belied by the record, there is no support for his argument that counsel was ineffective for failing to object to Huddleston's testimony. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (stating that the Fifth Circuit "has made clear that counsel is not required to make futile motions or objections."). Thus, this claim fails.

Moreover, Peucker raised this issue in his state habeas application, doc. 18-34 at 29-30, which the TCCA denied. Doc. 18-24. Peucker fails to demonstrate the state court denial was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03 (2000). He fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.

### E. Directed Verdict

Peucker argues counsel provided ineffective assistance by failing to request a directed verdict. Doc. 3 at 7. Relying again on his erroneous belief that Huddleston did not perform the lab tests to confirm that the substance was, in fact, methamphetamine, Peucker argues that the state failed to prove beyond a reasonable doubt that he possessed a controlled substance. Doc. 7 at 18. Peucker argues that his counsel should have requested a directed verdict on this ground and provided insufficient assistance in not doing so. *Id.*

In order to establish prejudice, Peucker must show that there is a reasonable probability that had counsel moved for a directed verdict, the motion would have been granted. *United States v. Rosalez-Orozco*, 8 F.3d 198, 199 (5th Cir. 1993). However, failure to move for directed

11

verdict does not render counsel ineffective "where there was possibly sufficient evidence of guilt to support a guilty verdict and no reason to believe that such a motion would be granted." *Burston v. Caldwell*, 506 F.2d 24, 28 (5th Cir. 1975).

Again, Peucker's argument fails for lack of factual basis. As discussed above, Huddleston testified that she performed the testing and determined it to be 4.63 grams of a mixture containing methamphetamine. Doc. 18-13 at 172-74. On cross-examination, Huddleston reiterate that she tested the substance. *See* Doc. 18-13 at 188-89. Because Huddleston's testimony was sufficient evidence that the substance possessed was methamphetamine, a request for a directed verdict would have been futile and counsel was not ineffective for not making such a request. *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point"); *see also Koch*, 907 F.2d at 527.

Moreover, Peucker raised this issue in his state habeas application, doc. 18-34 at 31-32, which the TCCA denied. Doc. 18-24. And Peucker fails to demonstrate the state court denial was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03 (2000). He fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.

**F. Failure to Raise Issue on Appeal**

Peucker avers that his appellate counsel, Shelly Fowler (Fowler), was ineffective for failing to raise a sufficiency-of-the-evidence claim on appeal. Doc. 3 at 8; Doc. 7 at 20-21. Although Peucker intertwines this claim with his claim that Fowler had a conflict of interest, *see id.*, each claim is addressed individually. In his sufficiency-of-the-evidence claim, Peucker,

12

reiterates his claim that Huddleston was not the analyst who tested the substance in this case. *See id.* He argues Fowler was ineffective for failing to challenge on appeal the sufficiency of the evidence on that basis.

Counsel's performance on appeal is judged under the two-prong *Strickland* test. *See Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998). "On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Id.* at 1043. "Rather, it means, as it does at trial, counsel performing in a reasonably effective manner." *Id.* Counsel's decision not to advance certain issues on appeal is not ineffective when the issues lack merit. *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). An appellate attorney "need not advance every argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (citing *Jones v. Barnes*, 463 U.S. 745, 749 (1983)). To demonstrate prejudice, a petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir.2001) (citations omitted). Additionally, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim . . . it is difficult to demonstrate that counsel was incompetent." *Id.*

Here, again, Peucker's claim centers on his mistaken belief that analyst Huddleston did not conduct the necessary tests to demonstrate that the substance Peucker possessed was methamphetamine. *See* Doc. 3 at 8; Doc. 7 at 20-21. As previously stated, however, the trial testimony reflects that Huddleston did conduct the relevant testing. *See* Doc. 18-13 at 172-74; Doc. 18-13 at 188-89. Because the record does not demonstrate that Huddleston failed to test the

13

substance possessed by Peucker, Fowler was not ineffective for failing to raise the issue or a related insufficient evidence challenge on appeal. *See Lucey*, 469 U.S. at 394; *Mendiola*, 635 F.2d at 491. For the same reasons, Peucker fails to demonstrate a reasonable probability that had Fowler raised this issue on appeal, the outcome of the appeal would have been different. Thus, he fails to demonstrate prejudice. *Briseno*, 274 F.3d at 207.

Moreover, Peucker raised this issue in his state habeas application, doc. 18-34 at 33-34, which the TCCA denied. Doc. 18-24. Peucker fails to demonstrate the state court denial was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts. *Williams*, 529 U.S. at 402-03 (2000). He fails to show there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98.

### G. Appellate Attorney Conflict of Interest

Peucker avers that he was "denied effective assistance of appellate counsel on direct appeal, due to a conflict of interest." Doc. 3 at 8. Specifically, he alleges that Fowler had a conflict of interest because she previously represented Monty Karl Roberts (Roberts) who the prosecution had intended to call as a witness in Peucker's trial, doc. 7 at 22, and because she previously participated in proceedings to terminate Peucker's parental rights. Doc. 3 at 8.

*Termination of parental rights*

Peucker makes the singular statement that Fowler "was the Mediator for the state in his termination of parental rights." Doc. 3 at 8. Peucker provides no further discussion or support for this conclusory and vague statement. *See Id.*; Doc. 7 at 22-23. "Although pro se habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch*, 907 F.2d at 530 (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.

14

1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

*Representation of Roberts[2]*

Peucker appears to allege that Fowler's previous representation of Roberts created a conflict of interest. *See* Doc 3 at 8; Doc. 7 at 22-23. The Sixth Amendment right to counsel includes the right to counsel who is not "burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. And "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980). "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350.

Here, the record shows that Fowler previously represented Roberts on a charge of theft of copper. Doc. 18-35 at 68. The record also shows that Roberts had agreed to testify at Peucker's trial. Doc. 18-34 at 51. However, Peucker was not tried for theft of copper, but rather, for possession of a controlled substance. *See* Doc. 18-12 at 210. And Fowler's represented Peucker only on appeal.

"An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo v. Johnson*, 205 F. 3d 775, 781 (5th Cir. 2000). Peucker fails to demonstrate how Fowler's previous representation of Roberts on a charge of copper theft created an actual conflict of interest with her representation of Peucker on his appeal from a conviction for possession of a controlled substance, especially in

---

[2] While Peucker labels Roberts his "co-defendant," doc. 3 at 8, he provides no support from the record, and the Court finds no support, to demonstrate that he and Roberts were actual codefendants at trial.

15

light of the fact that Roberts did not testify at Peucker's trial.  Prejudice cannot be presumed because Peucker fails to demonstrate that Fowler actively represented conflicting interests.  *See Sullivan*, 446 U.S. at 350.

Moreover, aside from alleging a conflict of interest, Peucker does not otherwise demonstrate that Fowler provided deficient performance, or that he was prejudiced by Fowler's representation.  *See* Doc. 3 at 8; Doc. 7 at 22-23.  While he does allege that Fowler's conflicting interests led her "to only raise frivolous grounds on direct appeal," *see* doc. 3 at 8, he provides absolutely no support for this singular conclusory statement.  This is insufficient to warrant relief.  *See Koch*, 907 F.2d at 530 (quoting *Woods*, 870 F.2d at 288 n.3; *Ross*, 694 F.2d at 1012.  Indeed, he contradicts this claim when he states that Fowler raised "valid" issues on appeal.  *See* Doc. 7 at 22.

Peucker raised this issue in his state habeas application, doc. 18-34 at 35-36, which the TCCA denied.  Doc. 18-24.  Peucker fails to demonstrate the state court denial was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of facts.  *Williams*, 529 U.S. at 402-03 (2000).  He fails to show there was no reasonable basis for the state court to deny relief.  *Richter*, 562 U.S. at 98.

Accordingly, Peucker's claims of ineffective assistance of trial and appellate counsel should be denied.

## IV. CONCLUSION

For the foregoing reasons, Peucker's petition for habeas corpus should be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on June 20, 2019.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).